**FORT WAYNE COMMUNITY SCHOOLS,**
**Appellant-Claimant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and Dane C. Starbuck, Appellees.**

No. 2–681A206.

Court of Appeals of Indiana,
First District.

Dec. 15, 1981.

Rehearing Denied Jan. 25, 1982.

James P. Fenton, Fort Wayne, for appellant-claimant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.

Wayne O. Adams, III and Donald J. Graham, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee Dane C. Starbuck.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Fort Wayne Community Schools (FWCS) appeals from a decision of the Review Board of the Indiana Employment Security Division (Review Board) determining Dane C. Starbuck eligible to receive unemployment compensation benefits. We affirm.

## STATEMENT OF THE FACTS

Starbuck had been employed for four (4) semesters as an English teacher and tennis coach by FWCS. Pursuant to the collective bargaining agreement between FWCS and Fort Wayne Education Association requiring a notice of layoff at least forty (40) days before the end of the semester, Starbuck was sent a letter on March 11, 1980, by the superintendent of FWCS advising him that present conditions indicated a reduction in teaching positions for the ensuing school year, and that as one of the teachers of least seniority he would be subject to layoff at the end of the current year. The letter also advised that if conditions changed his layoff might not be required and that in the past, few teachers had been laid off. In fact, the previous year Starbuck had received a like letter but had been called back in August. The letter further stated that "[i]n the event you are without a job this fall, you will be assigned automatically to the Substitute Teacher List on

September 1, 1980, unless you have requested that your name be omitted from the list. Teachers on layoff will be called first as substitute teachers are needed." Record at 14. On March 13, 1980, FWCS sent Starbuck a "Secondary Teacher Layoff List for 1980–81" which listed him fifth in seniority among seven English teachers on the layoff list.

Subsequent to receiving the layoff notice, Starbuck sought other employment but was unsuccessful. Since he had been considering returning to Indiana University to complete a master's degree, and had not heard from FWCS concerning employment in the fall of 1980, Starbuck applied for a one year leave of absence. When this request was denied, Starbuck resigned on August 18, 1980, and enrolled in the university.

On August 11, 1980, FWCS negotiated a new collective bargaining agreement under which Starbuck would have been eligible for employment as a permanent substitute teacher at a regular teacher's salary, rather than the much lower rate of pay of day-to-day substitutes. This agreement was not printed and made available to teachers until sometime later.

Starbuck applied for unemployment compensation benefits contending his employment was terminated on June 6, 1980. He was denied eligibility for such benefits by the deputy who found that he had a reasonable assurance of being employed as a teacher in the ensuing school year. The referee affirmed the deputy's decision and Starbuck appealed to the Review Board. The Review Board reversed the referee entering the following findings and conclusions:

> "FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was employed under contract for school year 1979–1980 and was notified of his layoff for school year 1980–1981 in a letter dated March 11, 1980.
>
> "It further finds that layoff was due to the reduction of teachers for the school year 1980–1981.

> "It further finds that claimant's layoff would be effective June 6, 1980, the end of the school year 1979–1980.
>
> "The Review Board concludes that claimant was separated from his employment effective June 6, 1980, due to lack of work.
>
> "DECISION: The decision of Referee Volz in Case No. 80–A–17521, mailed December 5, 1980, is hereby modified and reversed this 12th day of May, 1981. Claimant, if otherwise eligible, is entitled to benefits."

Record at 46–47.

## ISSUES

Fort Wayne Community Schools raises the following issues, which we have renumbered, for our consideration:

1. Whether the decision of the Review Board of the Indiana Employment Security Division, finding Dane C. Starbuck eligible for unemployment benefits, is supported by findings adequate to sustain the decision.

2. Whether the decision of the Review Board of the Indiana Employment Security Division, finding Dane C. Starbuck eligible for unemployment benefits, is contrary to law.

3. Whether the decision of the Review Board of the Indiana Employment Security Division, finding Dane C. Starbuck eligible for unemployment benefits, is supported by sufficient evidence to sustain the decision.

## DISCUSSION AND DECISION

*Issue One*

Before addressing the merits of Starbuck's claim to unemployment compensation benefits, we must determine the issue of the sufficiency of the Review Board's findings. FWCS asserts the findings are inadequate because of the failure of the Review Board to address the issues of whether or not Starbuck had a contract or a reasonable assurance of employment for the

ensuing school year. The basis for this contention is Ind.Code 22–4–14–7(2) (Supp. 1980) which provides:

"(2) with respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution (other than an institution of higher education as defined in IC 22–4–2–31), benefits may not be paid based on the service for any week of unemployment commencing during the period between two [2] successive academic years, or terms, or during the period between two [2] regular but not successive terms,'or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if the individual performs the services in the first of the academic years or terms and *if there is a contract or a reasonable assurance that the individual will perform services in an instructional*, research, or principal administrative *capacity for any educational institution* (other than an institution of higher education as defined in IC 22–4–2–31) in the second of the academic years or terms;" (Emphasis added.)

Starbuck, on the other hand, contends a finding that he had neither a contract nor reasonable assurance of continued employment is implicit in the finding that he was laid off effective June 6, 1980, due to lack of work.

■ We recognize the well established rule requiring every administrative agency to make findings of fact which contain all the specific facts relevant to contested issues so that this court can determine whether or not the agency has resolved those issues in conformity with the law. *Fuller v. Review Board of Indiana Employment Security Division*, (1981) Ind.App., 423 N.E.2d 725; *Jones v. Review Board of Indiana Employment Security Division*, (1980) Ind.App., 405 N.E.2d 601. The findings of the Review Board must be specific enough to permit this court intelligently to review the Board's decision. *Fuller v. Review*

*Board, supra; Jones v. Review Board, supra*. The purpose of the rule requiring such findings is to facilitate judicial review. *Hawley v. South Bend Department of Redevelopment*, (1978) Ind., 383 N.E.2d 333. In *Hawley*, our supreme court held the failure to make findings of underlying facts was harmless error since "the trial court had no problem in reviewing the action of the Commission since the hearing was fully transcribed." 383 N.E.2d at 336. In *Capital Improvement Board of Managers of Marion County v. Public Service Commission*, (1978) Ind.App., 375 N.E.2d 616, 631, this court stated:

"When the facts and findings of the agency are stated with sufficient particularity and specificity that this court feels it can adequately and competently review and comprehend the decision of the agency, the requirement of reciting specific facts is satisfied."

While the Review Board's findings are not a model of draftsmanship for such findings, we believe they are sufficient to permit intelligent review of the decision. In its decision, the Review Board referred to Ind.Code 22–4–14–7 (Supp. 1980) as the statute involved, and in its case history stated:

"CASE HISTORY—SOURCE OF APPEAL: The claimant appealed to the Review Board from the referee['s] decision mailed December 5, 1980, which affirmed the deputy's initial determination of October 1, 1980, holding that claimant was ineligible for benefits between two school terms within the meaning of Chapter 14–7 of the Act. Claimant's benefit rights were suspended indefinitely week ending June 14, 1980.

"The points in dispute before the Review Board are whether claimant is ineligible for benefits during the period between two academic years within the meaning of Chapter 14–7 of the Act and whether claimant was separated from employment due to lack of work within the meaning of Chapter 15–1 of the Act."

Record at 46.

■ In addition, the record of the hearing before the referee, upon which the Re-

view Board's decision is predicated, amply demonstrated that the issue of whether or not Starbuck had a contract or reasonable assurance of employment was fully developed. Thus, we believe the record is ample for us intelligently to review the Board's decision. Further, we agree that a finding that Starbuck had neither a contract nor a reasonable assurance of continued employment is implicit in the finding he was laid off as of June 6, 1980. We proceed to a determination of this case on the merits.

*Issue Two*

■ Fort Wayne Community Schools contends the decision of the Review Board finding Starbuck eligible to receive unemployment compensation benefits is contrary to law because he was ineligible under Ind. Code 22–4–14–7(2) (Supp. 1980). It is strongly urged that Starbuck had a reasonable assurance of employment either as a regular teacher or as a substitute teacher and, therefore, under the statute was ineligible for benefits. The basis for the claim of reasonable assurance of employment as a regular teacher is the past experience of FWCS and particularly the fact that Starbuck was rehired after he had received a like letter in 1979. The March 11, 1980, letter of the superintendent forms the basis for the assurance of employment as a substitute teacher.

Neither this court nor our supreme court has had occasion to interpret the statute here involved. However, courts in other jurisdictions have been called upon to interpret and apply similar statutory provisions. Those cases agree that the reason for the statutory disqualification is that the legislatures did not intend to subsidize teachers during their summer vacation periods. *Ortiz v. Commonwealth Unemployment Compensation Board of Review,* (1979) 42 Pa.

Cmwlth. 234, 400 A.2d 685; *Milkowski v. Illinois Department of Labor,* (1980) 82 Ill. App.3d 220, 37 Ill.Dec. 644, 402 N.E.2d 646. With that position, we are in full accord. The question thus becomes whether Starbuck was unemployed or merely seeking a subsidized vacation.

First, FWCS contends Starbuck had a reasonable assurance of reemployment based upon past experience. The cases of *Calamusa v. Board of Review,* (1978) 164 N.J.Super. 325, 396 A.2d 351; *Milkowski v. Illinois Department of Labor, supra; Robinson v. Administrator, Department of Employment,* (1977) La.App., 356 So.2d 477; and *Nelson v. Labor & Industrial Relations Commission,* (1980) Mo.App., 594 S.W.2d 356, are cited by FWCS in support of its position. As Starbuck has pointed out, however, these cases are distinguishable. In *Calamusa,* the denial of compensation was based upon the claimant's efforts to find work being insufficient to show "availability for work" as a prerequisite for such benefits.[1] Also, in *Milkowski, Robinson,* and *Nelson,* there was no indication that any of the teachers ever received a notice of layoff. *Ortiz v. Commonwealth Unemployment Compensation Board of Review, supra,* is also a case where the teacher-claimants had never been terminated. It is also true that the case of *Neshaminy School District v. Commonwealth Unemployment Compensation Board of Review,* (1981) —— Pa.Cmwlth. ——, 426 A.2d 1245, held that the fact the claimant had been reemployed after summer vacations for the previous two years was an important factor in determining whether there was a reasonable assurance of continuing employment. Nevertheless, we find these cases unpersuasive. In our view, Starbuck had, at most, only a hope of being reemployed as a regular teacher. This is not enough to constitute a

---

1. In *Calamusa v. Board of Review,* (1978) 164 N.J.Super. 325, 396 A.2d 351, the claimants were notified on April 12, 1976, their contracts would not be renewed. On August 11, 1976, they were rehired effective September 7th. The Board of Review applied the disqualification only after August 11th. The court upheld this decision stating the statute plainly barred compensation subsequent to August 11th. Here, Starbuck makes no claim for compensation subsequent to his resignation to return to the university.

reasonable assurance of continued employment in an instructional capacity. The only assurance afforded Starbuck by FWCS was that he would be placed on the substitute list.

Next, FWCS contends placing Starbuck on the substitute teacher list meets the reasonable assurance test. In its view, the statute requires only a reasonable assurance of performing instructional services in the next term, and substitute teaching is such instructional service. We recognize that there are a number of cases which have held that placing a previously employed, full-time teacher on the substitute list constitutes a reasonable assurance of continued employment in an instructional capacity. *Williams v. City School District of Binghamton*, (1981) App.Div., 439 N.Y.S.2d 503; *Wilson v. Ross*, (1981) 80 App.Div.2d 980, 438 N.Y.S.2d 603; *Gaeta v. Ross*, (1980) 78 App.Div.2d 742, 432 N.Y.S.2d 728; *Rish v. Commonwealth Unemployment Compensation Board of Review*, (1980) 48 Pa.Cmwlth. 388, 409 A.2d 959. *But see, Aronson v. Commonwealth Unemployment Compensation Board of Review*, (1981) 56 Pa. Cmwlth. 177, 424 A.2d 972 (where layoff notice merely said school district was reviewing its substitute list, court held there was no reasonable assurance of employment.)

However, as Starbuck argues, and as the evidence shows, substitute teaching is not steady employment and pays much less than regular teaching. He contends, therefore, that a commitment to place his name on the substitute list is not a reasonable assurance of employment. This position is clearly supported by some authorities.

In *Sulat v. Board of Review*, (1980) 176 N.J.Super. 584, 424 A.2d 451, a previously employed, full-time teacher was notified she would not be rehired, and she was, without her consent, placed on the substitute list. The court there, construing a similar statute, held her not ineligible for benefits, saying:

"Subsection (g)(1) of *N.J.S.A.* 43:21–4 was designed to prevent an obvious potential for abuse where a teacher, or other educational professional, recurrently worked under an actual contract or a reasonable expectation of reemployment for the nine-month academic term but did not work during the summer recess. . . .

"However, we cannot agree with the respondent's thesis which in essence holds that unemployment benefits should never be paid to full-time teachers whose contracts are not renewed and who are placed on a substitute list when terminated. . . . Claimant here lost full-time employment; she should not be denied unemployment benefits because the school board relegated her to the uncertain status of a day-to-day substitute against her will, despite her clearly expressed desire to find full-time employment in education or, if necessary, elsewhere in the economy. This case is in vivid contrast to the many cases standing for the proposition that a substitute teacher has a disqualifying 'reasonable assurance' of employment if substitute teaching will be available in the succeeding year. [Citations omitted.]

"In this context, we construe the disqualifying language in *N.J.S.A.* 43:21–4(g)(1) and its federal equivalent, 26 *U.S. C.A.* § 3304(a)(6)(A)(i), which states that 'if there is a contract or reasonable assurance that such individual will perform services in any *such* [instructional] capacity for any educational institution in the second of such academic years or terms' [emphasis supplied], to mean that full-time teachers under annual contract are not disqualified because, after lay-off, they are offered substitute teaching work. We conclude that 'services in any *such* capacity', in the circumstances, contemplates continuation of full-time services under an annual contract, not an offer of eligibility for day-to-day substitute services. We find this result fully consistent with the policy of our Unemployment Compensation Law and the federal act to ameliorate the impact of involuntary unemployment upon employees and the general public as well." (Citations omitted.)

176 N.J.Super. at 588–90, 424 A.2d at 453–54.

The Court of Appeals of Oregon in *Mallon v. Employment Division*, (1979) 41 Or. App. 479, 484, 599 P.2d 1164, 1167, said:

"We conclude that the statutory phrase, 'a reasonable assurance that such individual will perform services in any such capacity,' means he is assured he will perform any one of the three named types of services in the same or similar quantity respecting full-time or part-time services as performed during the preceding academic term."

In *Johnson v. Independent School District No. 535*, (1980) Minn., 291 N.W.2d 699, a full-time teacher and a long-term substitute teacher were not offered contracts for the following year but were retained on the district's active substitute list. The Supreme Court of Minnesota stated at 291 N.W.2d 702:

"We conclude that the evidence in this record, detailed above, is inadequate to support a finding that claimants were ineligible under § 268.08, subd. 6(a). The evidence indicates that the character of the employment which claimants could look forward to in the second year was substantially different and less desirable than their first year's employment. However, since the meaning of the statute was not settled, we remand to allow the parties an opportunity to present further evidence, if there be any, in light of the statute as construed. We also note that any such evidence must relate to facts available on the dates of the initial determinations."

We believe the views expressed in *Sulat, Mallon*, and *Johnson*, to be the better view. Especially do we find these cases compelling when comparing their rationale to that of the Indiana Appellate Court in *Ball v. Review Board of Indiana Employment Security Division*, (1971) 149 Ind.App. 494, 273 N.E.2d 869. There, a janitor who earned $3.50 per hour was laid off for lack of work. He applied for and received unemployment compensation benefits. Subsequently, he refused an offer of employment at $2.00 per hour. The Review Board denied his claim for further benefits on the ground he refused an offer of suitable work. In reversing the Board, the court said:

"[N]othing in the statute requires any administrative fact-finder to ignore reality; to find that work offered is suitable when in reality it is highly unsuitable. Nothing in the act says that the certainty of economic injury to the offeree is any less an element of unsuitability than is the risk of injury to his health, safety and morals."

149 Ind.App. at 500, 273 N.E.2d at 873.

In our view, it is just as unrealistic to say that a full-time teacher has a reasonable assurance of employment in an instructional capacity by an offer of substitute teaching which might be infrequent and at a greatly reduced rate of pay. Further, we do not believe the fact that Starbuck might have been employed as a permanent substitute pursuant to a collective bargaining agreement negotiated in August, after his March 11, 1980, notice of layoff, and after the June 6, 1980, end of the school term affects our decision. Starbuck's eligibility for benefits is to be determined at the time of his termination, and he cannot be declared ineligible for benefits based upon the happening of some event of which he had no reasonable assurance of occurring.

■ Thus, we conclude that a regular teacher who is laid off from his employment because of a reduction in the number of teaching positions is not disqualified from drawing unemployment compensation by the provisions of Ind.Code 22–4–14–7(2) (Supp. 1980) by being placed on the substitute teacher list for the ensuing term since such does not constitute a reasonable assurance of employment within the meaning of that statute. If otherwise eligible, such teacher should be eligible for unemployment compensation benefits.

*Issue Three*

We have previously determined that the Review Board's findings were sufficient to permit intelligent review of its decision. In determining whether or not the evidence is sufficient to support those findings, we may not reweigh the evidence nor judge the credibility of witnesses. Rather, we must accept the Board's findings unless there is no substantial evidence supporting the conclusions of the Board. *Gold Bond Building Products v. Review Board of Indiana Employment Security Division*, (1976) 169 Ind.App. 478, 349 N.E.2d 258. As our review of the record reveals, the decision of the Board is amply supported by the evidence.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.